UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
JM HOLDINGS 1 LLC and CEDAR HOLDINGS, LLC,

                                        Plaintiffs,

      v.

QUARTERS HOLDING GmbH,

                                       Defendant.
------------------------------------------------------------------x

Case No. 1:20-cv-03480 (JPO)

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT**
**OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

## **TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ...................................................................................................................... 2

      I.      The Complaint Fails to State a Plausible Claim ....................................... 2

            A.     Plaintiffs' Breach of Contract Claims Are Still Barred By the Lease ........ 2

                  1.     Plaintiffs Failed to Allege Landlord Performed Under the Lease ........................................................................................... 2

                  2.     Plaintiffs Have No Damages Under the Lease ............................. 3

                  3.     Plaintiffs' Amended Complaint Fails to Allege Tenant's Breach of the Lease........................................................................ 5

                          a.     Tenant Properly Exercised Its Termination Rights............. 5

                          b.     The "No Waiver" Provision Bars Plaintiffs' Claim of "Unreasonable Delay" ...................................................... 6

            B.     Plaintiffs' Breach of the Implied Covenant Claim Fails............................ 8

            C.     Plaintiffs' Promissory Estoppel Claim Fails As a Matter of Law ............. 9

                  1.     The Non-Party Landlords and Tenant Should Be Joined to this Action................................................................................... 10

CONCLUSION.................................................................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*DDCLAB Ltd. v. E.I. DuPont De Nemours & Co.*,
No. 03 CV 3654GBD, 2005 WL 425495 (S.D.N.Y. Feb. 18, 2005) ........................................9

*Delcon Constr. Corp. v. U.S. Dep't of Hous. & Urban Dev.*,
205 F.R.D. 145 (S.D.N.Y. 2002) ........................................................................................10

*ELBT Realty, LLC v. Mineola Garden City Co.*,
144 A.D.3d 1083 (N.Y. App. Div. 2016) .............................................................................9

*Feibleman v. Trustees of Columbia Univ. in City of New York*,
No. 19-CV-4327, 2020 WL 882429 (S.D.N.Y. Feb. 24, 2020) ............................................10

*In re Ideal Mortg. Bankers, Ltd.*,
No. 10-79280-DTE, 2013 WL 6813737 (Bankr. E.D.N.Y. Dec. 23, 2013) ...........................9

*Lamborn v. Dittmer*,
873 F.2d 522 (2d Cir. 1989) ................................................................................................7

*Long Island R.R. Co. v. Northville Indus. Corp.*,
41 N.Y.2d 455 (N.Y. 1977) .................................................................................................3

*MacArthur Properties I, LLC v. Galbraith*,
182 A.D.3d 514 (App. Div. 2020) .....................................................................................6, 7

*Maflo Holding Corp. v. S.J. Blume, Inc.*,
308 N.Y. 570 (N.Y. 1955) ................................................................................................3, 4

*Moran v. Erk*,
11 N.Y.3d 452 (N.Y. 2008) .................................................................................................9

*Paxi, LLC v. Shiseido Americas Corp.*,
636 F. Supp. 2d 275 (S.D.N.Y. 2009) ..................................................................................9

*Pitcher v. Benderson-Wainberg Associates II, Ltd. Partnership*,
277 A.D.2d 586 (App. Div. 2000) ........................................................................................3

*R&D Hotel, LLC v. Stop & Shop Supermarket Co., LLC*,
No. 15-CV-7258 (JPO), 2016 WL 4367971 (S.D.N.Y. Aug. 15, 2016) (Oetken, J.)..............2

*Sherwood 1600 Assocs. v. Wyman*,
No. 95 CIV. 6505 (HB), 1996 WL 457331 (S.D.N.Y. Aug. 14, 1996) ...................................5

*Spinelli v. Nat'l Football League*,
    903 F.3d 185 (2d Cir. 2018)............................................................................8

*Tirse v. Andrews*,
    8 N.Y.S.3d 711 (App. Div. 2015)..................................................................4

*U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*,
    775 F.3d 128 (2d Cir. 2014)............................................................................8

*ZCWK Assocs., L.P. v. Spadaro*,
    649 N.Y.S.2d 425 (App Div 1996)..................................................................4

**Statutes**

N.Y. Real Prop. Law § 223-a...........................................................................4

FRCP 11..............................................................................................................1

FRCP 17............................................................................................................10

FRCP 19(a)........................................................................................................10

## PRELIMINARY STATEMENT

As explained in Defendant's Memorandum of Law in support of its Motion to Dismiss the Complaint (the "Motion"), this action is frivolous and an abuse of the judicial process.  In the Motion, Defendant demonstrated, based in part on Plaintiffs' own admissions and omissions in the Complaint, that Plaintiffs could not state a cognizable, much less a plausible, cause of action. Rather than withdraw the Complaint (and in spite of being served with a Rule 11 safe harbor letter demanding just that), Plaintiffs chose to amend in response to the Motion.[1]

However, the amendment failed to address critical defects in Plaintiffs' original pleading. For example, Plaintiffs again fail to allege that Landlord delivered the Premises to Tenant. Plaintiffs fail to allege that Landlord was ready, willing and able to deliver the Premises. Plaintiffs fail to allege that Tenant had elected to take a rent abatement under Section 3.5 of the Lease, which would be necessary to plead a cognizable waiver claim.  Plaintiffs also fail to allege any additional context that could potentially make Plaintiffs' claims plausible (because it cannot).

Instead, Plaintiffs attempted to *delete admissions* from the original Complaint.

Aside from Plaintiffs' gamesmanship – which warrants sanctions – Plaintiffs' Amended Complaint did not (and cannot) cure the defects identified in Quarters' motion to dismiss. Accordingly, Defendant applied its motion to dismiss to the Amended Complaint and respectfully requests that the Court dismiss Plaintiffs' Amended Complaint in its entirety, with prejudice.

---

[1] Throughout Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss (the "Opposition Brief" or "Opp. Br."), Plaintiffs make the bizarre contention that Defendant "ignored" various allegations.  This is nonsense given the procedural posture of the Motion.  Notably, Plaintiffs never contend that the Amended Complaint "cures" any of the legal defects identified in the Motion, as it does not.

## ARGUMENT

I.  ## The Complaint Fails to State a Plausible Claim

    A.  **Plaintiffs' Breach of Contract Claims Are Still Barred By the Lease**

       1.  <u>Plaintiffs Failed to Allege Landlord Performed Under the Lease</u>

First, the Amended Complaint fails in its entirety because Plaintiffs do not plausibly allege that Landlord performed its obligations under the Lease – *i.e.*, to deliver the Premises to Tenant.  Rather, the Amended Complaint reveals that Landlord (1) failed to deliver the Premises by the Outside Delivery Date; (2) was on notice that Tenant believed Landlord had defaulted under the Lease by failing to deliver the Premises; (3) had no financing in place to complete Landlord's obligations; and (4) never delivered the Premises to Tenant.  (*See* Am. Compl.  ¶¶ 27, 32, 36-39; *see also* Dkt No. 11-4 at 2.)

Recognizing that Plaintiffs cannot allege performance, Plaintiffs advance a tortured reading of the Lease that there is "***no*** representation, warranty, or covenant that the renovations would be completed by November 30, 2019."[2] (Am. Compl. ¶ 23, 38; Opp. Br. 1, 15.) The Lease, however, is unambiguous on Landlord's delivery obligations.  Section 3.1 provides that Landlord, "at Landlord's sole cost and expense, ***shall complete*** the renovation of the Building … as of the Delivery Date."  (Lease § 3.1) (emphasis added.) The Parties also expressly set forth a reasonable time frame for Landlord's delivery of the Premises – between the Anticipated Delivery Date and the Outside Delivery Date (*Id.* § 3.3, 3.5.)  Moreover, there can be no doubt that these are binding covenants, as these provisions are set forth in Article 3 of the Lease, which is titled, "Landlord's Representations and Warranties and Covenants; Delivery of Premises." (*Id.* Art. 3.)  Thus, Landlord breached its obligation to deliver the Premises to Tenant.  *See R&D*

---

[2] Plaintiffs contention that Tenant failed to "notice a default," Opp. Br. 16, is also belied by Plaintiffs' allegation that Landlord was actually on notice of Landlord's default.  (Am. Compl. ¶¶ 36-39.)

*Hotel, LLC v. Stop & Shop Supermarket Co., LLC*, No. 15-CV-7258 (JPO), 2016 WL 4367971 at *2 (S.D.N.Y. Aug. 15, 2016) (Oetken, J.) ("Where the parties set down the terms of their agreement . . . in a clear and unambiguous writing, the agreement should be enforced according to its plain meaning.").

For this reason alone, Plaintiffs' Amended Complaint fails and should be dismissed.[3]

2.      Plaintiffs Have No Damages Under the Lease

Additionally, the Amended Complaint does not cure Plaintiffs' failure to plead a plausible damages claim.  Plaintiffs' amended allegation for "compensatory damages equal to the full value of the economic and financial benefit of the Lease," merely restates Plaintiffs' original claim for $8 million in accelerated rent payments using different words. (Am. Compl. ¶ 51.)

Seeking to avoid more than a century of case law holding accelerated rent is not available absent an acceleration clause, Plaintiffs cite to the doctrine of anticipatory repudiation. (Opp. Br. n. 6, 7).  However, New York law is clear: a breach of a Lease does not result in accelerated rent even under an anticipatory repudiation theory, absent an acceleration clause.  *See Long Island R.R. Co. v. Northville Indus. Corp.,* 41 N.Y.2d 455, 465 (N.Y. 1977) ("[N]o no suit can be brought for future rent in the absence of a clause permitting acceleration.")[4]

The *Pitcher* case that Plaintiffs rely on does not change this fact.  *Pitcher* does not address rent acceleration, but instead concerns whether a landlord could be held liable for locking a tenant out of the premises where the tenant repudiated its lease obligations.  *Pitcher v.*

---

[3] Plaintiffs do not address, much less contest, that they must plead Landlord's performance.

[4] Plaintiffs' argument that *Northville Industries* "otherwise affirmed and expanded the doctrine of anticipatory repudiation," Opp. Br. n. 6, is not only irrelevant, given that the case concerns a *license* agreement and not a lease, but is also disingenuous given the Court's reaffirmation of the holding in *Maflo* that a claim for future rent is barred absent an acceleration clause.  *Northville Indus.*, 41 N.Y.2d at 465.  The Court further clarified that "[a]pplication of the doctrine of anticipatory breach to this case does no violence to earlier precedents." *Id.* at 468.

*Benderson-Wainberg Associates II, Ltd. Partnership,* 277 A.D.2d 586, 587 (App. Div. 2000). In those circumstances, the court held that anticipatory repudiation barred the tenant's claim for wrongful eviction, but did not hold, as Plaintiffs imply, that the landlord was entitled to the "full value of the economic and financial benefit of the Lease." (Am. Compl. ¶ 51; Opp. Br. 13-14).

Rather, the law is that where a tenant is "barred from taking possession prior to the commencement of the lease term, he [is] excused from his obligation to make any payment of rent." *Tirse v. Andrews*, 8 N.Y.S.3d 711, 712 (App. Div. 2015); *c.f. ZCWK Assocs., L.P. v. Spadaro*, 649 N.Y.S.2d 425, 426 (App Div. 1996) ("[L]andlord's 'self-help' action in changing the locks to the demised premises, thereby impeding defendants' access and use thereof prior to the rent commencement date, and therefore prior to any default by defendant tenant, was a breach of the lease that suspended the tenant's yet to be incurred obligation to pay rent").

Here, Landlord never delivered the Premises to Tenant, Tenant *never* took possession of the Premises, the Rent Commencement Date *never* commenced, and the Term of the Lease *never* commenced. And Plaintiffs do not allege that any of these pre-conditions occurred.[5] Thus, Landlord's failure to deliver the Premises "suspended [] [T]enant's yet to be incurred obligation to pay rent." *Id.* As such, Plaintiffs cannot allege any plausible damages, and they are certainly not entitled to the "full value of the economic and financial benefit of the Lease," *i.e.* accelerated rent payments.[6] *See Maflo Holding Corp. v. S.J. Blume, Inc.,* 308 N.Y. 570, 575 (N.Y. 1955);

---

[5] Rather than address Landlord's failure to comply with the pre-conditions to the Lease Commencement Date, Plaintiffs deflect by arguing that the Lease is effective as of execution. Quarters does not dispute the effectiveness of the Lease; however, the Lease Term (and Tenant's rent obligations under the Lease) never commenced due to Landlord's failure to deliver the Premises. (*See* Lease §§ 1.3, 1.4, 1.5.) Thus, Tenant was well within its right to terminate the Lease without any obligation to pay Landlord rent or any other "damages." *See e.g.* N.Y. Real Prop. Law § 223-a (McKinney).

[6] Plaintiffs' new claim for consequential and punitive damages, including "project delays and increased financing and legal costs," and "loss of value to its property," are also barred by Section 19.6 of the Lease. (*See* Am. Compl. ¶¶ 18-20, 52, 61; Opp. Br. 6-7.)

4

*Sherwood 1600 Assocs. v. Wyman*, No. 95 CIV. 6505 (HB), 1996 WL 457331, at *3 (S.D.N.Y. Aug. 14, 1996) (dismissing action brought by landlord where "the lease [did] not contain an acceleration clause").[7]

For this reason as well, the Amended Complaint should be dismissed with prejudice.

3.      Plaintiffs' Amended Complaint Fails to Allege Tenant's Breach of the Lease

The Amended Complaint also fails to allege Tenant breached the Lease by exercising its termination right, and Plaintiffs' "waiver" argument does not cure this defect.

a.      *Tenant Properly Exercised Its Termination Rights*

Section 3.5 of the Lease is clear that Tenant had the right to elect to terminate the Lease or take a rent abatement in the event Landlord failed to deliver the Premises by the Outside Delivery Date, which Landlord failed to do.  Further, the Lease is clear that these "additional rights" are to be exercised in Tenant's "sole discretion."  Plaintiffs do not allege that Tenant ever elected to take a rent abatement.  Nor do Plaintiffs allege that Landlord ever delivered the Premises to Tenant.  Plaintiffs also do not allege that Landlord ever provided Tenant with notice that it would be delivering the Premises.  Instead, Plaintiffs admit that Landlord was on notice that its failure to deliver the Premises was a default, that Landlord had not obtained the financing it needed to finish the Premises, and that Landlord did nothing to attempt to cure this default.[8] Thus, based on Plaintiffs' own allegations, Tenant properly exercised its termination right under Section 3.5 of the Lease.

---

[7] Plaintiffs' mitigation allegation should be rejected as implausible, given that New York City is currently in Phase Four of reopening and had already begun the reopening process when Plaintiffs filed the Amended Complaint.

[8] These facts undermine Plaintiffs' allegation in Count I and II that Tenant breached Section 21.1 of the Lease by failing to deliver an estoppel certificate.  However, there was no breach since Tenant had the right to identify Landlord's default for failure to deliver the Premises pursuant to the terms of Section 21.1 and Plaintiffs admit that Landlord refused to sign.  (Am. Compl. ¶ 39.)

Recognizing the futility of their position, Plaintiffs attempt to mischaracterize Defendant's argument that Tenant could terminate the Lease "in its sole discretion" at any time. Defendant is not arguing that it had a "durable, perpetual, non-waivable right to terminate the Lease." (Opp. Br. at 2.)  Defendant is not arguing that it could have taken possession of the Premises and then decided years later to terminate the Lease.  Those are the facts of the *Savasta* case that Plaintiffs rely on, but which are not analogous to the facts here.[9]  Rather, Defendant's position is that Tenant had the right to elect to terminate the Lease or to take a rent abatement up until such time as (1) Tenant actually elected to exercise one of its rights; or (2) Landlord delivered the Premises and Tenant took possession, thereby electing the rent abatement.  As Plaintiffs do not allege that Tenant exercised its rent abatement right or that Landlord delivered the Premises, Tenant was squarely within its right to terminate the Lease under Section 3.5.

      b.      *The "No Waiver" Provision Bars Plaintiffs' Claim of "Unreasonable Delay"*

Plaintiffs' contention that "Tenant's delay [in exercising its termination right under Section 3.5] was plainly unreasonable" is also meritless because it renders the "no waiver" provision in Section 25.1 of the Lease meaningless.  As written, the "no waiver" provision applies to Tenant's "failure" to exercise its rights, including its "additional rights" under Section 3.5.  (Lease § 25.1) ("No *failure* of … Tenant to exercise any power given [under the Lease] … shall constitute a wavier….")  Thus, Plaintiffs' argument that Tenant "unreasonably delay[ed]" in exercising its rights under Section 3.5 should be rejected.  *MacArthur Properties I, LLC v. Galbraith*, 182 A.D.3d 514, 514 (App. Div. 2020) ("[A] party [cannot] use the doctrine of waiver

---

[9] In *Savasta*, the partnership agreement at issue granted defendant a termination right in the event certain partnership assets were sold by a particular date. 82 N.Y.2d 763, 764-65.  However, rather than exercise that right, plaintiff continued to collect partnership profits for nearly two years. *Id.* at 765. The partner then purported to terminate the partnership agreement, though it still continued collecting distributions.  *Id.* Here, Plaintiffs do not allege Landlord delivered the Premises, Tenant occupied the Premises, and Tenant *then* decided to terminate.

to frustrate the reasonable expectations of the parties embodied in a contract when they have expressly agreed otherwise.").

Further, Plaintiffs' reliance on *Savasta* and its progeny for the "unreasonable delay" argument is inapplicable to the facts here.  Neither *Savasta* nor any of the other cases that Plaintiffs rely on for this proposition concern a party's "unreasonable delay" in exercising a right where the agreement at issue contained a "no waiver" provision.  That is because "no waiver" provisions are enforceable and would bar such a claim.  *See MacArthur Properties I, LLC v. Galbraith*, 182 A.D.3d 514 (App. Div. 2020) (affirming dismissal of plaintiff's claim premised on waiver in the face of a no-waiver provisions).  Moreover, unlike *Savasta* where the plaintiff continued to perform after the termination right arose, here not only did Tenant not perform under the Lease, but in fact had no performance obligations until delivery of the Premises.

Additionally, the termination provision in *Savasta* is not analogous to Tenant's rights under Section 3.5 of the Lease.  In *Savasta*, the plaintiff only bargained for the right to terminate the partnership agreement if the partnership sold certain assets before a particular date. 82 N.Y.2d 763, 764-65. The agreement, however, did not give plaintiff the right to make any alternative election, such as the right to elect an increase in equity.  Thus, it was reasonable to assume the partner waived its termination right by accepting partnership profits for years.

Here, however, Section 3.5 grants Tenant the "additional rights" to either (1) elect to terminate the Lease or (2) elect a rent abatement.  Thus, Tenant's forbearance on electing either right cannot be read as a waiver.  *See Lamborn v. Dittmer*, 873 F.2d 522, 529 (2d Cir. 1989). Moreover, Plaintiffs do not allege that Tenant elected to take a rent abatement.  In fact, the words "rent abatement" *do not appear* in the Amended Complaint or Opposition Brief.  Rather, Plaintiffs contend that Tenant "waived" its rights under Section 3.5 because Tenant indicated it

"desired and intended to complete the Project."[10]  (Am. Compl. ¶ 27(v).)  Not only does Tenant's

narrow reading of the Lease directly frustrate Tenant's bargained-for rights under the Lease, but

it exposes the fact that Tenant did not make a clear, unequivocal and decisive act to waive its

termination rights under Section 3.5, which is required to state a waiver.  *See U.S. D.I.D. Corp.

v. Windstream Commc'ns, Inc.*, 775 F.3d 128, 136 (2d Cir. 2014).[11,12]

      Accordingly, Count I should be dismissed with prejudice.

### B.    Plaintiffs' Breach of the Implied Covenant Claim Fails

      Count II of the Amended Complaint should also be dismissed because it is duplicative of

Plaintiffs' (failed) breach of contract claim,[13] and Plaintiffs' allegation of a purported "pattern of

deception and misconduct" does not change that result.  (Opp. Br. 18).

      Contrary to Plaintiffs' assertion, they cannot plead the implied covenant claim "in the

alternative" to Plaintiffs' breach of contract claims because Plaintiffs' allegations would

"defeat[] a right that [Tenant] actually bargained for."  *Spinelli v. Nat'l Football League*, 903

F.3d 185, 206 (2d Cir. 2018).  Namely, Tenant's right to terminate the Lease under Section 3.5

---

[10] The Amended Complaint deleted the admission that "*[a]t no point* during the extensive conversations that took place between November 30, 2019 and April 15, 2020 [when Tenant sent its notice of termination], *did any representative* of Quarters or Tenant *state a desire or reservation of rights to terminate the Lease*," *i.e.*, that Tenant did not intentionally relinquish its rights.  (Dkt. No. 1 ¶ 14.)  Not only is this new allegation clearly manufactured and implausible, but Plaintiffs also ignored Defendant's rent abatement argument in the Motion.

[11] Plaintiffs' "unreasonable delay" argument exposes Plaintiffs' "heads, I win; tails, you lose" logic.  On the one hand, Plaintiffs claim that Tenant "unreasonably delayed" exercising its termination rights because there is no definite timeframe in the Lease, while on the other hand, claiming that Landlord could not have breached the Lease by failing to deliver the Premises because there's no representation, warranty, or covenant to do so by a particular date, despite the "Outside Delivery Date" set forth in Article 3.  Apparently, Landlord may act with impunity, but Tenant must immediately exercise its rights (or waive them) despite the "no waiver" provision.

[12] Plaintiffs' reliance on *TSS-Seedman* for the proposition that "the mere existence of a 'non-waiver' clause precludes waiver" is inapposite, as there the landlord "accepted all withheld rent prior to service of the termination notices and thus rental delinquencies were remedied."  72 N.Y.2d 1024, 1027 (N.Y. 1988).

[13] The allegations in Count II of the Amended Complaint simply re-allege the same allegations asserted in Count I: that Tenant breached the Lease by exercising its termination right under Section 3.5 and by failing to execute the estoppel certificate.  (*Compare* Am. Compl. ¶¶ 51-52 *with* ¶¶ 57-59.)

and its right to "specify[]" any "uncured defaults by Landlord" in the estoppel certificate pursuant to Section 21.1 of the Lease.[14]

Additionally, Plaintiffs' reliance on *Richbell* and contention that the implied covenant claim is based on Tenant's purported "bad faith" is unavailing, as the New York Court of Appeals has disavowed the reasoning in *Richbell*.  New York law holds that where a party has a termination right in its sole discretion, as Tenant has here, bad faith is irrelevant.  *See Moran v. Erk*, 11 N.Y.3d 452 (N.Y. 2008); *ELBT Realty, LLC v. Mineola Garden City Co.*, 144 A.D.3d 1083, 1084 (N.Y. App. Div. 2016) (affirming purchaser's termination of the contract where the termination right was "in its sole discretion"); *Paxi, LLC v. Shiseido Americas Corp.*, 636 F. Supp. 2d 275, 286 (S.D.N.Y. 2009) ("[T]he obligation of good faith and fair dealing does not negate a expressly bargained-for clause that allows a party to exercise its discretion….").

For these reason, Count II should be dismissed with prejudice.

### C.    Plaintiffs' Promissory Estoppel Claim Fails As a Matter of Law

Plaintiffs' claim for promissory estoppel in Count III must also be dismissed with prejudice because there is no dispute that the Lease is enforceable and governs the parties' relationship with respect to the Premises.  *DDCLAB Ltd. v. E.I. DuPont De Nemours & Co.*, No. 03 CV 3654GBD, 2005 WL 425495, at *6 (S.D.N.Y. Feb. 18, 2005) ("[Promissory estoppel] is a narrow doctrine which generally only applies where there is no written contract, or where the parties' written contract is unenforceable for some reason."); *Paxi* 636 F. Supp. 2d at 287 (holding promissory estoppel claim "is baseless" because "the parties have a written agreement") (McMahon, J.).  The case law cited by Plaintiffs is in accord.  *See In re Ideal Mortg. Bankers,*

---

[14] Plaintiffs' argument that the alleged "side letter" constitutes bad faith for the implied covenant claim is meritless, as Plaintiffs do not even attempt to explain how the purported side letter (which Landlord refused to execute) would have deprived Landlord of the benefit of its bargain.  In fact, there is nothing illegal about the alleged "side letter," as any modification to the Lease must be in writing.  (*See* Lease § 25.2; Dkt. No. 11-3 at 1.)

*Ltd.*, No. 10-79280-DTE, 2013 WL 6813737, at *9 (Bankr. E.D.N.Y. Dec. 23, 2013) ("[I]f there is a valid contract covering the same parties and subject matter as the quasi-contract claims, then under no set of facts may the plaintiff recover under the quasi-contract claims, making dismissal of the quasi-contract claims appropriate.").[15]

     1.     <u>The Non-Party Landlords and Tenant Should Be Joined to this Action</u>

In the Amended Complaint, Plaintiffs allege that the non-party landlords, Roth Innovations LLC and LPC Properties LLC (the "Non-Party Landlords") purportedly "assigned all rights and causes of action regarding this matter to Cedar." (Am. Compl. ¶ 9.) While this allegation must be taken as true (and Plaintiffs failed to attach a copy of this purported assignment to the Amended Complaint),[16] the assignment does not refute the well-established law that a party to a contract is a necessary party. *See Delcon Constr. Corp. v. U.S. Dep't of Hous. & Urban Dev.*, 205 F.R.D. 145, 147 (S.D.N.Y. 2002). Since the Non-Party Landlords are parties to the Lease and Plaintiffs admit that "joinder of Roth and LPC[] would be 'feasible' under Rule 19(a)," Defendant respectfully requests that the Court order their joinder, in the event the Amended Complaint is not dismissed. (Opp. Br. 22.)

Additionally, and contrary to Plaintiffs' assertion, Quarters did not "waive" its right to join Tenant as a necessary or permissive party. While the Guaranty grants Landlord the right to "proceed directly against Guarantor," Quarters did not "waive" either Rule 17 or 19 of the Federal Rules of Civil Procedures. (Dkt. No. 11-2 § 14.) Since Tenant is a party to the Lease, Defendant respectfully requests that Tenant be joined as a party to this action.

---

[15] *Feibleman* does not dictate a contrary result, as the Court found "the painfully detailed allegations … could reasonably support diametrically opposite outcomes," which is not the case here. *Feibleman v. Trustees of Columbia Univ. in City of New York*, No. 19-CV-4327, 2020 WL 882429, at *1 (S.D.N.Y. Feb. 24, 2020).

[16] Defendant reserves its right to dismiss Plaintiff Cedar Holdings LLC on standing grounds.

## <u>CONCLUSION</u>

For all of the foregoing reasons and those set forth in Quarters' memorandum of law in support of its motion to dismiss, Quarters' motion should be granted in its entirety.

New York, New York
Dated: July 23, 2020

Respectfully submitted,

<u>/s/ Joshua D. Bernstein</u>
Joshua D. Bernstein
Kathleen M. Prystowsky
Ruma B. Mazumdar
AKERMAN LLP
520 Madison Avenue, 20th Floor
New York, NY, 10022
Tel.: (212) 880-3856
Fax: (212) 905-6410
Email: Joshua.Bernstein@akerman.com

*Counsel for Defendant Quarters Holding GmbH*

11