UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

JM HOLDINGS 1 LLC and CEDAR HOLDINGS, LLC,

                                Plaintiffs,           Case No. 1:20-cv-03480 (JPO)

     v.

QUARTERS HOLDING GmbH,

                                Defendant.

-------------------------------------------------------------------x

**DECLARATION OF BARBARA ALBERT**

     Barbara Albert declares, under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct:

     1.     I am Senior Legal Counsel US to Defendant Quarters Holding GmbH in the above-captioned action.

     2.     I submit this Declaration in support of Defendant's Memorandum of Law in Support of Its Motion for Imposition of Sanctions Pursuant to Rule 11.

     3.     A true and correct copy of the email correspondence between Tenant and Landlord, dated March 17, 2020, and referenced in Paragraph 39 of the Amended Complaint, is attached hereto as Exhibit A.

     4.     I was present on a telephone call with Landlord the following day. The Amended Complaint omits the details of this phone call, including that Mr. Tress expressly said that Landlord could not afford the rent abatement under the Lease. Mr. Tress explained that if Tenant wanted to move forward with the Lease, Tenant would need to execute the incorrect estoppel certificate without acknowledging Landlord's default for failing to deliver the Premises, and waive all of Tenant's rights under the Lease.

5.      When I told Mr. Tress that Tenant would not waive its rights under the Lease, he responded, "come after me" and told me that he was going to shut down the construction site "maybe for a month, maybe for a year" and that Tenant could "come after him" whenever he decided to open it back up.

6.      Landlord also omitted from both the Complaint and Amended Complaint the disingenuous email from Mr. Tress to Tenant, dated March 18, 2020, stating, "Due to corona we will be shutting the site for next few months and reassess then." *See* Exhibit A.

7.      Landlord also failed to advise the Court that another individual affiliated with Landlord, and believed to be one of Mr. Tress' partners, reached out to Tenant by phone thereafter to see if there was any way that Tenant would be willing to waive its right to the rent abatement under the Lease and sign the incorrect estoppel.

8.      Tenant declined to waive any of its rights under Section 3.5 of the Lease, including its right to elect to terminate the Lease.

9.      On April 15, 2020, Tenant exercised its rights under Section 3.5 of the Lease and sent Landlord a notice of termination ("Termination Notice").  (*See* ECF No. 11-4.)  The Termination Notice also demanded that Landlord return the security deposit in the amount of $209,250.00. (*Id.* at 2.)

10.      After receiving the Termination Notice, Mr. Tress began threatening Tenant by phone and email.  For example, on the evening of April 16, 2020, Mr. Tress sent an email to Tenant stating that the Termination Notice was "wholly rejected for fraudulent cancellation."  A few minutes later, Mr. Tress sent another email, stating: "Also note, that any attempt to further perpetuate any fraud to the LOC due to this false cancellation will result in criminal charges being

filed against your company. I am adding criminal attorneys to this e mail chain." True and correct copies of these emails are attached hereto as <u>Exhibits B and C</u>.

11.    That same evening, Mr. Tress called one of Tenant's representatives threatening to "go to the press" and destroy Quarters' brand and reputation if Tenant did not withdraw the Termination Notice.

12.    On April 22, 2020, Landlord, again demanded that Tenant withdraw the Termination Notice. (ECF No. 11-5.)  On May 1, 2020, Tenant reiterated the validity of the Termination Letter and requested again that Landlord return Tenant's Security Deposit, which is in the form of a Letter of Credit, pursuant to Section 8.1 of the Lease.  (ECF No. 11-7.)

13.    Late the next business day, May 4, 2020, Mr. Tress' entities filed the Complaint in this action against Defendant, the guarantor, claiming Tenant had tried to commit "bank fraud" and that Plaintiffs were entitled to $8 million in accelerated rent payments.

14.    The following day, Defendant received requests from press outlets asking if Quarters wanted to respond to the Plaintiffs' allegations "accus[ing] Quarters of 'soliciting outright bank fraud' and then backing out of its $8M lease at the Brooklyn building as Covid shut down New York City."  A true and correct copy of the press inquiry is attached hereto as <u>Exhibit D</u>.

15.    An article was published in The Real Deal on May 6, 2020, highlighting Plaintiffs' fake allegations against Quarters of a "fraudulent conspiracy" and "bank fraud."  *See* https://therealdeal.com/2020/05/06/landlord-sues-co-living-firm-quarters-for-bailing-on-lease/.

16.    That same evening, one of Tenant's representatives received a call from Mr. Tress at a "No Caller ID" number.  Mr. Tress asked multiple times if Tenant's representative had seen the article in The Real Deal, as it was "fresh off the press" and then hung up.

17.     Mr. Tress also sent text messages to a former employee of Tenant's a week later with a copy of the Real Deal article, stating "Saw this?"  A true and correct copy of Mr. Tress' text messages is attached hereto as Exhibit E.

18.     Additionally, the same day The Real Deal article was published, May 6, 2020, I learned from Silicon Valley Bank that Landlord made a full claim on the letter of credit in the amount of $209,250.00.  Silicon Valley Bank confirmed that Landlord was paid the entire Security Deposit from the letter of credit on May 7, 2020.

19.     Thereafter, Plaintiffs did not ask Defendant's counsel to accept service of process of the Complaint, despite the Defendant being located in Germany.

20.     On May 11, 2020, I learned that Plaintiffs' counsel reached out to Tenant's counsel attempting to settle this matter, asking Tenant again to revoke the Termination Notice based on the allegations in the Complaint.

21.     Mr. Tress' attack on Quarters' reputation has had material harm on Quarters' reputation, as one landlord for another Quarters development in another state terminated a lease, citing The Real Deal article in noting concerns about Quarters' ability to carry out its financial obligations.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Denver, Colorado
July 24, 2020

DocuSigned by:

*Barbara Albert*

3DBCA42A34724C0...

Barbara Albert