**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------x
JM HOLDINGS 1 LLC and CEDAR HOLDINGS, LLC,

                                    Plaintiffs,

              v.

QUARTERS HOLDING GmbH,

                                    Defendant.

-----------------------------------------------------------------------x

Case No. 1:20-cv-03480 (JPO)

**DEFENDANT'S MEMORANDUM OF LAW IN FURTHER SUPPORT**
**OF ITS MOTION FOR IMPOSITION OF SANCTIONS PURSUANT TO RULE 11**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ......................................................................................................... 1

    I.   RULE 11 SANCTIONS ARE WARRANTED AGAINST PLAINTIFFS ...................... 1

        A.  Plaintiffs Refuse to Withdraw Their Knowingly False "Bank Fraud" Allegation .......................................................................................... 2

             1.    Contemporaneous Evidence Demonstrates There Is No "Bank Fraud" .......... 3

             2.    Plaintiffs Commenced This Action for an Improper Purpose ......................... 5

             3.    Additional Discovery Does Not Save Plaintiffs From Sanctions ..................... 6

        B.  Plaintiffs' Continue to Pursue Accelerated Rent, Despite Black Letter New York Law That Accelerated Rent Is Not Available In the Absence of an Acceleration Clause ................................................................................. 7

        C.  Plaintiffs Have a Habit of Not Fully and Accurately Representing Facts to the Court ........................................................................................................ 9

    II.  MONETARY SANCTIONS ARE WARRANTED AND PLAINTIFFS ARE NOT ENTITLED TO COSTS ................................................................................. 10

CONCLUSION ...................................................................................................... 11

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*210 West 29th Street Corp. v. Chohan*,
  786 N.Y.S.2d 322 (App. Div. 2004) ........................................................................8

*23 East 39th Street Developer, LLC v. 23 East 39th Street Developer, LLC*,
  101 N.Y.S.3d 199 (App. Div. 2019) ........................................................................7

*AboveNet Commc'ns, Inc. v. A&D Data Corp.*,
  No. 08CIV.6188(RPP)(MHD), 2010 WL 235005 (S.D.N.Y. Jan. 19, 2010) ..........8

*Barr v. Country Motor Car Group, Inc.*,
  789 N.Y.S.2d 350 (App. Div. 2005) ........................................................................8

*Benderson v. Poss*,
  530 N.Y.S.2d 362 (App. Div. 1988) ........................................................................9

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990) ..................................................................................................5

*Calloway v. Marvel Entm't Grp., a Div. of Cadence Indus. Corp.*,
  854 F.2d 1452 (2d Cir. 1988), *rev'd in part on other grounds sub nom. Pavelic
  & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120 (1989) .........................................2

*Galin v. Hamada*,
  283 F.Supp.3d 189 (S.D.N.Y. 2017) .................................................................2, 10

*Galin v. Hamada*,
  753 F. App'x 3 (2d Cir. 2018) ..................................................................................2

*Long Island R.R. Co. v. Northville Indus. Corp.*,
  393 N.Y.S.2d 925 (1977) .........................................................................................8

*Maflo Holding Corp. v. S.J. Blume, Inc.*,
  308 N.Y. 570 (N.Y. 1955) ........................................................................................7

*Martin v. Glenzan Associates, Inc.*,
  426 N.Y.S.2d 347 (App. Div. 1980) ........................................................................8

*McCready v. Lindenborn*,
  172 N.Y. 400 (N.Y. 1902) ........................................................................................7

*O'Brien v. Alexander*,
  101 F.3d 1479 (2d Cir. 1996) ...................................................................................2

*Pitcher v. Benderson-Wainberg Associates II, Ltd. Partnership*,
715 N.Y.S.2d 104 (App. Div. 2000) ................................................................8

*Revson v. Cinque & Cinque, P.C.*,
221 F.3d 71 (2d Cir. 2000) .............................................................................5

*Ross Realty v. V & A Iron Fabricators, Inc.*,
787 N.Y.S.2d 602 (App. Term 2004) .............................................................8

*Runfola v. Cavagnaro*,
910 N.Y.S.2d 910 (App. Div. 2010) ...............................................................7

*Skaff v. Progress Int'l, LLC*,
No. 12 CIV. 9045(KPF)(FM), 2014 WL 856521 (S.D.N.Y. Mar. 4, 2014) ............8

*StreetEasy, Inc. v. Chertok*,
752 F.3d 298 (2d Cir. 2014) ...........................................................................2

*Sussman v. Bank of Israel*,
56 F.3d 450 (2d Cir. 1995) .............................................................................6

*Utility Garage Corp. v. National Biscuit Co.*,
418 N.Y.S.2d 87 (App. Div. 1979) .................................................................8

*Violet Realty, Inc. v. Amigone, Sanchez & Mattrey, LLP*,
123 N.Y.S.3d 384 (App. Div. 2020) ...............................................................7

## Other

18 U.S.C.A. § 1344 ...........................................................................................4

Fed. R. Civ. P. 11 ..................................................................................... *passim*

Fed. R. Civ. P. 11(c)(4) ................................................................................10

Defendant Quarters Holding GmbH ("Quarters" or "Defendant") respectfully submits this memorandum of law in further support of its motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure and the Court's inherent power against Plaintiffs JM Holdings 1 LLC ("JM Holdings") and Cedar Holdings, LLC ("Cedar," and collectively with JM Holdings, "Plaintiffs") for pursuing frivolous claims against Defendant, continuously misleading the Court and other sanctionable conduct.

## PRELIMINARY STATEMENT

Plaintiffs' Opposition Brief fails to provide a credible explanation for Plaintiffs commencement and continued prosecution of their frivolous lawsuit against Defendants, assertion of demonstrably false allegations in their Amended Complaint, and stubborn refusal to cease pursing Plaintiffs' frivolous claims, even after being made aware multiple times that they are not supported by law or fact.  Now that Plaintiffs' improper purpose, deceptive actions, and false allegations have been exposed, Plaintiffs seek to paint themselves as victims.  Plaintiffs' continued prosecution of frivolous claims and statement of false allegations warrant sanctions.

## ARGUMENT

## I.   RULE 11 SANCTIONS ARE WARRANTED AGAINST PLAINTIFFS

Despite serving two Rule 11 safe harbor letters and providing Plaintiffs with evidence that their claims are false, Plaintiffs have continued to (1) pursue invented allegations of "bank fraud," and (2) seek damages for accelerated rent (that never became due under the Lease) in spite of a century of black letter New York law forbidding rent acceleration in the absence of an acceleration clause.  For all these reasons, sanctions are warranted.

The law is clear that a litigant's obligations with respect to Rule 11 do not cease once a party files a particular pleading or motion. Rule 11 "impose[s] a continuing obligation to correct

or withdraw previously filed briefs or pleadings." *Galin v. Hamada*, 753 F. App'x 3, 8 (2d Cir. 2018); *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996) (quoting Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment) ("[A] litigant's obligations with respect to the contents of these papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit.")

Thus, once a party learns that its "allegations on the central (and dispositive) issue in the case were 'utterly lacking in support,'" it is obligated to "withdraw the Complaint" containing those allegations. *Galin v. Hamada*, 283 F.Supp.3d 189, 203 (S.D.N.Y. 2017) (quoting *StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 307 (2d Cir. 2014)), *aff'd*, 753 F. App'x 3 (2d Cir. 2018); *see also, eg.*, *Calloway v. Marvel Entm't Grp., a Div. of Cadence Indus. Corp.*, 854 F.2d 1452, 1472 (2d Cir. 1988) (sanctions are appropriate where a party "decline[s] to withdraw [a claim] upon an express request by his or her adversary after learning that it was groundless"), *rev'd in part on other grounds sub nom. Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120 (1989).

## A. Plaintiffs Refuse to Withdraw Their Knowingly False "Bank Fraud" Allegation

First, Rule 11 sanctions are warranted against Plaintiffs for the simple reason that Plaintiffs invented an allegation of "bank fraud" in order to gain media attention for this case, harm Quarters' reputation, and attempt to force a wrongful settlement based on these false allegations. Defendant has repeatedly advised Plaintiffs that their allegations are false and has provided Plaintiffs with *evidence* of the falsity of this allegation. In response, Plaintiffs refused to withdraw their false allegations as required under Rule 11, but instead double-down on their claim that Tenant solicited bank fraud. Such behavior warrants sanctions.

*1.   Contemporaneous Evidence Demonstrates There Is No "Bank Fraud"*

As Quarters explained in its moving brief, in both the Complaint and Amended Complaint, Plaintiffs cherry-pick allegations, omitting critical context, so that Plaintiffs could assert that Quarters suggested "bank fraud."   As demonstrated by the full correspondence provided by Quarters, the parties were plainly discussing an *amendment* to the Lease, not any illegal "side" agreement that the parties would hide from the bank.

In opposition to the Motion to Dismiss, Plaintiffs attempted to deflect the falsity of its allegations by accusing Quarters of "improperly quibbl[ing] with these facts in its motion to dismiss" because "the emails that Defendant cites contain general discussion about the estoppel certificate but do not purport to memorialize the discussion set forth in the Amended Complaint." (ECF No. 22 at 6.)  Plaintiffs further argued, "Unsurprisingly, Quarters apparently did not want to put its solicitation of bank fraud in writing." *Id.*

Quarters then produced an email from Tenant's representatives setting forth a contemporaneous record of the telephonic conversation with Mr. Tress where Plaintiffs allege Tenant solicited bank fraud.  The email plainly shows that Quarters continued to suggest that the parties enter into an amendment to the Lease.  The email reads as follows:

> Just got off the phone with Mark Tress from 251 Dekalb, Lori was on the line too. He received the funding and needed us to sign an estoppel and SNDA.
>
> Lori updated the estoppel to acknowledge Landlord defaults and he was unwilling to present to them that way.
>
> He essentially wanted us to sign the estoppel as-is without any reference to Landlord defaults, which would remove any additional free rent rights or anything else we have rights to if we did not list them. He said they only he would move forward is by removing defaults and keeping the deal as-is.
>
> We drew a line in the sand and said we need to acknowledge all of them and could do so in a ***short amendment*** where we would still remain whole. He was not willing to and said we could revisit in 6 months to a year, which we said would not work.

(ECF No. 31-3) (emphasis added).

This email clearly shows Tenant did not solicit bank fraud, but instead suggested amending the Lease. Now faced with the truth that Tenant had always suggested amending the Lease and never suggested "bank fraud" of any kind, Plaintiffs still refuse to disavow their allegations of "bank fraud." Instead, Plaintiffs claim that this email proves an attempt to solicit bank fraud and have twice offered the following incomplete representation of this email to the Court:

> Specifically, the Lindheim Email states explicitly that, in the March 19 phone call, Quarters "drew a line in the sand" by suggesting the parties use a *separate* document (instead of the estoppel, which would be given to the bank) to "acknowledge" supposed defaults. Kritzer Decl. Ex. C. Mr. Tress rejected that proposal. Tress Decl. ¶ 4. These are the same facts Plaintiffs alleged, and which Defendant incorrectly argues warrant sanctions. *See* Am. Compl. ¶ 40 ("Quarters suggested that it could issue an estoppel certificate stating there were no uncured defaults under the Lease, which Cedar could then present to its bank to get funding, if Cedar would sign a 'side letter' stating the opposite.").

(Opp. Br. at 6-7 (emphasis in original), ECF No. 28.)

There is no plausible interpretation of this email that suggests Tenant attempted to induce bank fraud. Bank fraud is committed when someone "knowingly executes, or attempts to execute, a scheme or artifice (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C.A. § 1344. Under Section 21.1 of the Lease, Tenant was well within its rights to demand that Landlord's failure to deliver the Premises by the Outside Delivery Date be identified as a default in the estoppel certificate. However, Landlord admittedly refused to identify its continued failure to deliver the Premises as a default. (Amended Complaint ¶ 39) Thus, the only way Tenant could possibly execute any estoppel certificate stating Landlord was not in default of the Lease would

4

be to enter into an amendment to the Lease to extend the Outside Delivery Date, while preserving Tenant's rights under the Lease. *That is not bank fraud*.

Further, there is no allegation in the pleadings or in the (conspicuously) short and non-specific Declaration of Mark Tress submitted in opposition to this Rule 11 Motion that even hints that Tenant suggested Landlord should not or could not tell the bank about the lease amendment. And why would Tenant? Tenant has *no interest* in the loan proceeds. Tenant only cared that the Premises were completed and delivered, as required by the Lease. It was Landlord's lender and Landlord's loan proceeds. This allegation was invented, plain and simple.

### 2.  Plaintiffs Commenced This Action for an Improper Purpose

There can be no mistake that Plaintiffs instituted this action and specifically included the "bank fraud" allegation with the sole intention of besmirching Quarters' reputation (as it promised to do) in order to wrongfully attempt to force Tenant to withdraw its Termination Notice. This is an abuse of the Court system and warrants sanctions. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 397 (1990) (Rule 11 is "aimed at curbing abuses of the judicial system").

While Plaintiffs cite to *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 80-81 (2d Cir. 2000) for the proposition that they could not have had an improper motive because pre-litigation demand letters are commonplace, this case is entirely inapposite. *Revson* held that the plaintiff could not be sanctioned for public accusations of fraud where he *reasonably* believed he could prove it. The opposite is true here, as explained at length above.

Moreover, Mr. Tress' self-serving affidavit in which he claims he did not leak the Complaint to The Real Deal does not negate the fact that leading up to the filing of the Complaint, Mr. Tress threatened to go the media and seek criminal prosecution against Tenant for terminating the Lease. Plaintiffs also failed to address Plaintiffs' decision to include unsatisfied and unverified Yelp.com reviews in the Amended Complaint, despite the fact that these individual complaints

have nothing to do with this lease or Plaintiffs' claims in the action.  Thus, the combination of

Plaintiffs' pre-action threats, pocketing of more than $200,000.00 of Tenant's Security Deposit,

continued refusal to disavow invented allegations of "bank fraud" when presented with the truth,

and inclusion of unrelated Yelp complaints in the Amended Complaint demonstrate Plaintiffs'

improper purpose in filing and continuing this action.[1]

### 3.   *Additional Discovery Does Not Save Plaintiffs From Sanctions*

Furthermore, additional discovery will not save Plaintiffs' "bank fraud" allegation.

Contrary to Plaintiffs' contention, Defendant did not "outright refuse[] to provide full

discovery."  As discussed more fully in Defendant's letter to the Court, dated August 8, 2020, at

no time during either of the two Rule 11 safe harbor periods did Plaintiffs ever conduct any

investigation into the falsity of Plaintiffs' "bank fraud" allegations.  Instead, it was only *after*

Defendant filed this Rule 11 Motion that Plaintiffs demanded that Defendant immediately provide

all documents relating to the affidavit of Barbara Albert that was submitted in support of this Rule

11 Motion and documents relating to the estoppel certificate and/or "side letter."

Plaintiffs intentionally delayed their request for documents and refused to seek any

extension of their time to respond, wrongly assuming that Defendant would not be able to provide

documents and they could claim in opposition to this Rule 11 Motion that discovery was needed

on the issue of "bank fraud."  Recognizing Plaintiffs ploy, Defendant promptly cooperated and

expedited the production of non-privileged documents that it could reasonably identify in six days,

in order to avoid just this argument.  As discussed above, the documents *directly contradict*

*Plaintiffs' allegations bank fraud.*  Thus, no additional discovery can change the fact of Plaintiffs'

---

[1] Plaintiffs also rely on *Sussman v. Bank of Israel*, 56 F.3d 450, 458 (2d Cir. 1995) to support their pre-litigation actions, however, the *Sussman* court also noted that improper purpose may be inferred from complete lack of a factual and legal basis for bringing a claim.  As discussed fully in Defendant's Motion to Dismiss, Plaintiffs did just that.

false allegations. In fact,  the documents produced show that the only party to ever suggest any kind of "side" agreement – whatever that means – *was Landlord*, not Tenant.  The documents further show that Landlord's offer was rejected by Quarters.  As has become the norm, Plaintiffs failed to advise the Court of these documents. *See* Bernstein Decl.[2] Ex. A.

*       *       *

For all the foregoing reasons, sanctions are warranted for Plaintiffs' refusal to disavow and dismiss its invented "bank fraud" allegations.

**B.  Plaintiffs Continue to Pursue Accelerated Rent, Despite Black Letter New York Law That Accelerated Rent Is Not Available In the Absence of an Acceleration Clause**

Second, and regardless of how Plaintiffs' word their damages claim in this action, Plaintiffs are improperly seeking $8 million in accelerated rent, despite the fact that (1) Landlord never delivered the Premises; (2) the Rent Commencement Date under the Lease never occurred; and (3) there is no rent acceleration clause in the Lease.

Further, Plaintiffs argument that the doctrine of anticipatory repudiation provides a legal basis for accelerated rent under a New York lease is directly contrary to more than a century of New York law.  The law could not be clearer:  "[N]o suit can be brought for future rent in the absence of a clause permitting acceleration."  *Maflo Holding Corp. v. S.J. Blume, Inc.,* 308 N.Y. 570, 575 (N.Y. 1955) (citing *McCready v. Lindenborn*, 172 N.Y. 400 (N.Y. 1902)); *see also Violet Realty, Inc. v. Amigone, Sanchez & Mattrey, LLP,* 123 N.Y.S.3d 384, 386 (App. Div. 2020); *23 East 39th Street Developer, LLC v. 23 East 39th Street Developer, LLC*, 101 N.Y.S.3d 199, 201 (App. Div. 2019) ("[T]he lease did not contain an acceleration clause, and the landlord could not have asserted a cause of action for future rent not yet due."); *Runfola v. Cavagnaro*, 910 N.Y.S.2d

---

[2] The Bernstein Declaration refers to the Declaration of Joshua D. Bernstein, dated August 17, 2020, submitted in further support of this Rule 11 Motion.

910 (App. Div. 2010) (same); *Barr v. Country Motor Car Group, Inc.*, 789 N.Y.S.2d 350, 351 (App. Div. 2005) ("Because the lease agreement contains no acceleration clause, plaintiff was entitled only to the amount of past due rent at the time the action was commenced."); *210 West 29th Street Corp. v. Chohan*, 786 N.Y.S.2d 322 (App. Div. 2004) ("[A] claim for accelerated rent is not cognizable in the absence of an acceleration clause."); *Martin v. Glenzan Associates, Inc.*, 426 N.Y.S.2d 347, 348 (App. Div. 1980) (same); *Utility Garage Corp. v. National Biscuit Co.*, 418 N.Y.S.2d 87, 88 (App. Div. 1979) (citing *Maflo* for the same).

This is because "it is well-established in New York that a cause of action for breach of contract … arising from a series of installment payments accrues separately for each installment." *Skaff v. Progress Int'l, LLC*, No. 12 CIV. 9045(KPF)(FM), 2014 WL 856521, at *4 (S.D.N.Y. Mar. 4, 2014); *see also AboveNet Commc'ns, Inc. v. A&D Data Corp.*, No. 08CIV.6188(RPP)(MHD), 2010 WL 235005, at *5 (S.D.N.Y. Jan. 19, 2010) (citing *Long Island R.R. Co. v. Northville Indus. Corp.,* 393 N.Y.S.2d 925, 931 (1977) and explaining "its application…reflects a more general principle accepted in New York that, absent an acceleration clause, an aggrieved party to a contract for the payment of money in fixed installments may not, as a general matter, obtain acceleration by a claim of anticipatory breach") (compiling cases).[3]

In fact, even where New York commercial leases *do* contain rent acceleration clauses, they are not automatically enforced. *See e.g., Ross Realty v. V & A Iron Fabricators, Inc.*, 787 N.Y.S.2d 602, 603 (App. Term 2004) (holding that the accelerated-rent clause is deemed to impose a penalty

---

[3] As discussed in Defendant's Reply in Support of its Motion to Dismiss (ECF No. 23), the anticipatory repudiation discussion in *Pitcher* does not address rent acceleration, but instead concerns whether a landlord could be held liable for locking a tenant out of the premises where the tenant repudiated its lease obligations. *Pitcher v. Benderson-Wainberg Associates II, Ltd. Partnership,* 715 N.Y.S.2d 104, 587 (App. Div. 2000). While the Third Department remanded the case for a hearing on landlord's damages, there is no suggestion that landlord was seeking or entitled to accelerated rent. Indeed, at the time of the Appellate Division's decision, the lease term had nearly ended, undermining entirely Plaintiffs argument that *Pitcher* supports a landlord's claim for "future rent."

8

and is not enforceable); *Benderson v. Poss*, 530 N.Y.S.2d 362, 363 (App. Div. 1988) (holding landlord was not entitled to accelerated rent where it locked out defendant tenant and terminated the lease relationship).

Plaintiffs' continued attempt to claim New York law is not what it is warrants sanctions.

## C. Plaintiffs Have a Habit of Not Fully and Accurately Representing Facts to the Court

Third, Plaintiffs have developed an unfortunate habit of failing to fully and accurately reflect facts to the Court. Many of these omissions are outlined in Quarters' moving papers, as well as the Motion to Dismiss, and are not re-addressed here.

By way of example only, in the Amended Complaint, Plaintiffs advance the new "theory" that the Lease contains "no representation, warranty, or covenant" requiring Landlord to deliver the Premises to Tenant by any particular date. Thus, according to Plaintiffs, Landlord could not have defaulted under the Lease by failing to deliver the Premises by the Outside Delivery Date – or even four months after the Outside Delivery Date. However, this "theory" is plainly contradicted by Article 3 of the Lease, which outlines "Landlord's Representations and Warranties and Covenant; Delivery of Premises." Not unsurprisingly, this Article sets forth the time frame during which the parties agreed that Landlord would deliver the Premises – *i.e.*, between the Anticipated Delivery Date and the Outside Delivery Date (Lease § 3.3, 3.5.) Plaintiffs' allegation that the Lease contains no such requirement deliberately misconstrues the terms of the Lease and leads to an absurd conclusion that Landlord would never have to deliver the Premises. That, then, begs the question – what is the point of the lease agreement? Given Plaintiffs' allegations in this action, it seems that the sole purpose of the Lease was to provide Landlord a windfall of $8 million in accelerated rent payments for Premises that Landlord was apparently never required to deliver. This is an absurd interpretation of the Lease. The facts are clear: Landlord failed to deliver the

Premises by the Outside Delivery Date and Tenant terminated the lease pursuant to its termination right under Section 3.5 of the Lease.

## II. MONETARY SANCTIONS ARE WARRANTED AND PLAINTIFFS ARE NOT ENTITLED TO COSTS

For all the foregoing reasons outlined in this reply brief and Quarters' moving papers, monetary sanctions against Plaintiffs are warranted, and Plaintiffs' request for costs on this motion should be rejected outright.

Pursuant to Fed. R. Civ. P. 11(c)(4), this Court is authorized to enter "an order directing payment to the movant of part or all of the reasonable attorneys' fees and other expenses directly resulting from the violation." Such an order can encompass the fees and costs a party incurs for filing the Rule 11 motion, as well as the fees and costs of litigation that "the parties would have avoided, preserving their own resources (not to mention the Court's)" had the plaintiff "withdrawn his claims when it was 'patently clear' that there was no evidence to support them and [when] he knew [the defendant] intended to seek Rule 11 sanctions." *Galin*, 283 F.Supp.3d at 204.[4]

Here, Plaintiffs claims of "bank fraud" and entitlement to $8 million in accelerated rent are plainly frivolous and were imposed for an improper purpose. Indeed, the whole action is frivolous, as Plaintiffs seek damages under a lease where they never performed the most basic covenant – delivering the Premises. As such, monetary sanctions are necessary and appropriate here, and Plaintiffs are not entitled to their costs.

---

[4] Plaintiffs' reliance on *Safe-Strap Co. v. Koala Corp.* is misguided as the Court "did not reach the substance of Koala's allegations…and denie[d] Koala's Rule 11 motion in part because it serves…as a surrogate for a summary judgment motion." 270 F. Supp. 2d 407, 412 (S.D.N.Y. 2003). The Court also reserved resolution of the Rule 11 issues until the end of the litigation. *Id.* Quarters sought to dismiss the Amended Complaint through the filing of the Motion to Dismiss and separately seek sanctions for Plaintiffs' improper purpose in pursuing this lawsuit.

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court grant Defendant's motion for Rule 11 Sanctions against Plaintiffs, awarding Defendant its costs and attorneys' fees incurred in defending this action and bringing this motion, directing Plaintiffs to return Tenant's security deposit with interests, barring Plaintiffs' claims by dismissing them with prejudice, and for such other and further relief as this Court deems just.

New York, New York
Dated: August 17, 2020

                                        Respectfully submitted,


                                        By: */s/ Joshua D. Bernstein*
                                              Joshua D. Bernstein
                                              Kathleen M. Prystowsky
                                              Ruma B. Mazumdar
                                        AKERMAN LLP
                                        520 Madison Avenue, 20th Floor
                                        New York, NY, 10022
                                        Tel.: (212) 880-3856
                                        Fax: (212) 905-6410
                                        Email: Joshua.Bernstein@akerman.com

                                        *Counsel for Defendant*
                                        *Quarters Holding GmbH*