Nathaniel Kritzer
212 378 7535
nkritzer@steptoe.com



1114 Avenue of the Americas
New York, NY 10036
212 506 3900 main
www.steptoe.com

February 4, 2021

**<u>Via ECF</u>**
The Honorable J. Paul Oetken
United States District Court
Southern District of New York
40 Foley Square, Room 706
New York, NY 10007

**Re:    JM Holdings 1 LLC and Cedar Holdings, LLC v. Quarters Holding GmbH, No. 20-
        cv-03480-JPO (S.D.N.Y.)**

Dear Judge Oetken:

      We represent Plaintiffs in the above-referenced action.  We write to advise the Court of a recent development related to the United States operations of Defendant Quarters Holding GmbH ("Quarters") that bear on the Quarters' pending motion to dismiss ("MTD") (ECF No. 10) and motion for sanctions ("MFS") (ECF No. 25), collectively "the Motions."

      As the Court is aware, this case arises out of Quarters' breach of an agreement wherein it guaranteed over $8 million in payments under a commercial lease for a multifamily property in Brooklyn.  Plaintiffs are owners of the property and poured significant resources into outfitting the property to be a Quarters Co-Living location.  The tenant for the underlying commercial lease was Medici 251 DeKalb LLC ("Tenant")—a shell subsidiary of Quarters created solely for the purpose of entering into the lease.

      On January 21, 2021, Tenant, along with nine other United States-based Quarters affiliates filed for Chapter 7 bankruptcy in the Southern District of New York.[1]  Quarters Properties USA, Inc., the sole member of Medici 251 DeKalb LLC, was among these affiliates.[2] The bankruptcy caps Quarters' exit from operating in the United States, and no reorganization of its United States subsidiaries is proposed or anticipated.

---

[1] *See In re Medici 251 DeKalb LLC,* No. 21-10077 (Bankr. S.D.N.Y. 2021) ("Medici Bankruptcy")

[2] *See In re Quarters Properties USA, Inc.*, No. 21-10081 (Bankr. S.D.N.Y. 2021).

The Honorable J. Paul Oetken
February 4, 2021
Page 2

**Steptoe**

    This development bears on the Court's consideration of the pending Motions in two important ways.

    *First,* the recent bankruptcies reinforce Plaintiffs' allegations that, leading up to its breach, Quarters was having considerable operational issues with its U.S. expansion. *See, e.g.*, Am. Compl. ¶ 25. Defendant dismissed these allegations—even citing them in its motion for sanctions—as irrelevant and intended to "besmirch" Quarters. MFS Br. at 21. But, as Plaintiffs explained, these operational issues are highly relevant to explaining why Quarters—who had consistently led Plaintiffs to believe it would accept delivery of the premises throughout late 2019 and early 2020—abruptly abandoned the project when the COVID-19 pandemic hit New York. The recent bankruptcies confirm that Plaintiffs' allegations regarding Quarters' operational shortcomings were both well-founded and relevant to the downward spiral and ultimate bankruptcy of Quarters' United States subsidiaries.

    In fact, documents submitted to the bankruptcy court by the interim trustee tell a strikingly similar account of Quarters abruptly abandoning other "partners," less than one year after doing the same to Plaintiffs. As one building owner explained to Quarters the weekend before the bankruptcy filing: (1) tenants suddenly lost access to Quarters' app and their key FOBs; (2) tenants moving in could no longer do so and were left to navigate quarantine rules without a place to stay; (3) garbage was no longer being picked up; and (4) the building owners were concerned about the building being sufficiently monitored in the event of emergencies. ECF No. 6-4 at 13, Medici Bankruptcy. Another building owner noted similar issues and indicated that the "state of affairs is essentially the tenant having abandoned the building filled with increasingly unhappy tenants and this is detrimental to the building we have a vested interest in." *Id.* at 8. A third building owner complained to Quarters:

> I hope you guys know the amount of damage you've done by how you've handled this. You sent a letter to all the tenants with my email address on it telling them we're responsible for everything and you didn't even tell us it was going out. . . . This is a $70M+ asset and we are trying to salvage whatever value we can given that we had zero notice that this was going to happen and now you're making it worse by scaring the tenants and giving them false information and making us look like heartless idiots[.]

*Id.* at 19. Likewise, one of Quarters' vendors—responsible for maintenance and porter services in the building—indicated to the Trustee, "[w]e are owed $74,000 as we have been doing business with Quarters since September and have never been paid to date." ECF No. 6-5 at 5.

    Media reporting and analysis in response to the bankruptcy lend even further support for Plaintiffs' claims. Industry publication, *The Real Deal,* reported that the co-living industry in the United States had "mixed results" going into the pandemic and the "spread of the pandemic and a rental market depressed by high vacancy in major cities [had] also taken a heavy toll on the

The Honorable J. Paul Oetken
February 4, 2021
Page 3

Steptoe

sector."[3] Specific to Quarters, *The Real Deal* reports from multiple sources that "there were additional factors that exacerbated the firm's financial strain."  One Philadelphia-based developer recalled tensions between the U.S. and Berlin operations and that the two operations had "two different ways of doing things, and two different ways or approaching meetings, and problems, and budgets."  The same developer complained that Quarters changed the design for her building six times, turned over its staff at an "extraordinary rate," and even confronted one project lead who wanted to "undo the work of his predecessor because it was too costly."

The mismanagement, struggling U.S. operations, and cut-and-run strategy illuminated in the bankruptcy is ***precisely*** what Plaintiffs alleged in the Amended Complaint.  These facts lend further weight to Plaintiff's allegations that Quarters belatedly asserted a pretextual and legally meritless "default" as a pretext to abandon a project it could not handle.[4]

*Second*, Tenant's insolvency lends further support for why it should not be joined under Federal Rule of Civil Procedure 19.  The Tenant is now in bankruptcy proceedings and litigation against it is barred by the automatic stay—which does ***not*** extend to this action since Quarters is not in bankruptcy. Joining the Tenant to this case would be fruitless, since claims against the Tenant must now be asserted, if at all, in bankruptcy court.

At bottom, Plaintiffs have more than plausibly alleged their claims and the recent bankruptcies provide only further confirmation.  We are pleased to provide any additional information that the Court may find helpful, and we thank the Court for its consideration.

Respectfully submitted,

/s/ Nathaniel J. Kritzer

---

[3] Erin Hudson, *How Quarters' $300M US Expansion Ended in Bankruptcy*, The Real Deal (Feb. 1, 2021) (available at https://therealdeal.com/2021/02/01/how-quarters-300m-us-expansion-ended-in-bankruptcy/).

[4] *The Real Deal*'s significant coverage of the bankruptcy filing further undercuts Quarters' unsupported accusation that Plaintiffs somehow sought to harm Quarters' reputation with this lawsuit. MFS Br. at 1. At this point, given Quarters' undisputed cut-and-run strategy with respect to its United States subsidiaries and operations, this is simply a moot argument.