UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JM HOLDINGS 1 LLC, et al,

                       Plaintiffs,

-v-

QUARTERS HOLDING GMBH,

                       Defendant.

---

20-CV-3480 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

JM Holdings 1 LLC ("JM") and Cedar Holdings, LLC ("Cedar"), bring suit against Quarters Holding GmbH ("Quarters"), alleging breach of contract and other related claims. Quarters has moved to dismiss the complaint for lack of subject-matter jurisdiction, failure to state a claim, and failure to join parties under Rule 19; it has also filed a motion for sanctions. For the reasons that follow, both motions are denied.

**I.     Background**

The following facts, drawn from the amended complaint, are presumed true for the purposes of this motion. (*See* Dkt. No. 16 ("AC").)

This case concerns a multifamily property located at 251 DeKalb Avenue in Brooklyn, New York. (AC ¶¶ 1, 18.) JM and Cedar (together, "Plaintiffs") are New Jersey companies that own and manage the property.[1] (AC ¶¶ 7-9.) On July 6, 2019, Plaintiffs agreed to lease the property to Medici 251 DeKalb LLC ("Medici"), a shell company controlled by the German

---

[1] Technically, JM owns the property along with non-parties Roth Innovations LLC ("Roth") and LPC Properties LLC ("LPC"). (AC ¶¶ 8-9.) For the purposes of this litigation, Roth and LPC have assigned their interest to Cedar, which manages and directs "all activities relating to the Premises." (AC ¶ 9.) For simplicity's sake, the Court will use "Plaintiffs" to refer to the landlords of the property.

1

corporation Quarters.[2]  (AC ¶¶ 11-13, 21.)  Quarters signed an agreement guaranteeing Medici's performance and payment under the lease, which was meant to cover a ten-year term.  (AC ¶ 21.)

Quarters, which markets itself as the WeWork of "co-living," rents furnished rooms in shared apartments "through an app that anyone can download."  (AC ¶ 2.)  That was its plan for the property on DeKalb Avenue, and as part of the lease, Plaintiffs agreed to renovate the property in line with that vision.  (AC ¶¶ 21, 22.)  The parties agreed that the "delivery date" — when the property would be ready for occupancy — would not occur until the renovations were substantially complete.  (Dkt. No. 11–1 § 3.2.[3])  The parties anticipated that the property would be ready by October 2019.  (Dkt. No. 11–1 § 3.3.)

If, however, the property was not ready by November 30, 2019, the lease granted Medici the right to terminate the lease or to receive rent abatement "for each day of delay" beyond that date.  (Dkt. No. 11–1 § 3.5.)  The lease also contained a "no-waiver" provision, which read, in part: "No failure of Landlord or Tenant to exercise any power given hereunder, and no custom or practice of the parties at variance with the terms hereof shall constitute a waiver of Landlord's or Tenant's right to demand compliance with the terms hereof."  (Dkt. No. 11–1 § 25.1.)

After signing the lease, Plaintiffs began renovating the property, but project delays soon "pushed the projected delivery date … from late 2019 into 2020."  (AC ¶¶ 22, 24.)  Still, Quarters, acting on Medici's behalf, "told [Plaintiffs] throughout late 2019 and 2020 that it fully intended to occupy the [p]remises," and "pressed [Plaintiffs] to continue investing in

---

[2] Because Medici is a shell company, "all of Plaintiffs' dealings were with agents of Quarters."  (Dkt. No. 22 at 9.)

[3] Although Plaintiffs do not attach the lease to their complaint, the Court may nevertheless consider the document in evaluating the instant motion.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (holding that a court may consider documents incorporated in the complaint by reference, or where plaintiff relies "on the terms and effect of a document in drafting the complaint").

2

renovations." (AC ¶ 26.) On December 2, 2019, for example, a Quarters representative emailed Plaintiffs to ask for "final specs for kitchens and tiles" that Plaintiffs were installing. (AC ¶ 27.) On January 7, 2020, Quarters encouraged Plaintiffs "to obtain additional financing for the project." (*Id.*) A week later, a *Forbes* article referencing the Brooklyn site quoted the Quarters CEO as saying the company was "thrilled to continue growing [its] U.S. footprint in New York City." (*Id.*) On January 27, a Quarters press release declared that the site was "expected to deliver" shortly. (*Id.*)

Then, COVID-19 hit New York City. In March 2020, as part of a push for new financing, Plaintiffs asked Medici, via Quarters, for an estoppel certificate — a document, signed by the parties to the lease, that helps landlords prove cash flow when seeking loans from third parties. (AC ¶ 32.) As part of the lease, Medici had agreed to execute and deliver such a certificate upon request. (Dkt. No. 11–1 § 21.1.) Now, however, Quarters refused to sign the certificate unless it stated that Plaintiffs were "in default for not delivering the Premises by November 30, 2019." (AC ¶ 38.) When Plaintiffs replied that they would not sign a document acknowledging a default, Quarters suggested that it could sign an estoppel certificate "stating there were no uncured defaults under the Lease" if Plaintiffs would sign a "side letter" stating the opposite. (AC ¶¶ 39, 40.) Plaintiffs rejected that proposal "as soliciting outright bank fraud." (AC ¶ 40.) Then, on April 15, 2020, Quarters' counsel notified Plaintiffs that Medici would be terminating the lease "based on the passage of the original November 30, 2019, projected delivery date." (AC ¶ 41.)

Plaintiffs brought suit on May 4, 2020, alleging that Quarters had breached its guaranty of the lease and acted in bad faith. (*See* Dkt. No. 1; AC.) Quarters has filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), lack of subject-matter

3

jurisdiction under Rule 12(b)(1), and failure to join a party under Rule 12(b)(7).  (*See* Dkt. No. 10.)  Quarters has also filed a motion for sanctions.  (Dkt. No. 25.)  For the reasons that follow, both motions are denied.

## II.  Legal Standards

### A.  Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  Rule 12(b)(1) motions encompass objections to standing. *Tasini v. New York Times Co.*, 184 F. Supp. 2d 350, 354 (S.D.N.Y. 2002).  In resolving a motion to dismiss under Rule 12(b)(1), a district court "may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113.  The plaintiff bears the burden of proof and must show by "a preponderance of the evidence" that subject-matter jurisdiction exists. *Id.*

### B.  Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a complaint need not contain "detailed factual allegations," it must nevertheless offer something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  In resolving a motion to dismiss, the court "must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Doe v. Indyke*, 457 F. Supp. 3d 278, 282 (S.D.N.Y. 2020) (citing *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014)).

### C. Rule 12(b)(7)

An action may also be dismissed for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). To determine whether dismissal is warranted, Rule 19 establishes a two-part inquiry. First, the court must determine "whether the party should be joined as a 'necessary party' under Rule 19(a)." *Am. Trucking Ass'n, Inc. v. New York State Thruway Auth.*, 795 F.3d 351, 356 (2d Cir. 2015) (internal citation omitted). A party may be necessary if, in its absence, "the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). A party may also be necessary if it has an interest in the subject of the action such that its absence would "impair or impede [its] ability to protect the interest" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B). If a necessary party "has not been joined as required," the court must order the joinder. Fed. R. Civ. P. 19(a)(2).

If a necessary party cannot be joined for jurisdictional or other reasons, the Court must then consult Rule 19(b), which "requires courts to consider whether, 'in equity and good conscience,' the party is one without whom the action between the remaining parties cannot proceed." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 132 (2d Cir. 2013) (quoting Fed. R. Civ. P. 19(b)). In general, courts are "extremely reluctant to grant motions to dismiss based on nonjoinder" and will do so "only when the defect cannot be cured and serious prejudice or inefficiency will result." *Am. Trucking*, 795 F.3d at 357 (internal citation omitted).

## III. Discussion

Quarters seeks to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7), and has also filed a motion for sanctions. The Court addresses each argument in turn.

5

**A.     Rule 12(b)(1)**

As a threshold matter, the Court considers whether Cedar has standing.[4]  "The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance," an inquiry that involves "both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise."  *Phoenix Light*, 2020 WL 1285783, at *9 (internal quotation marks and citation omitted).  For constitutional standing, a plaintiff must establish: "(1) injury in fact, which is a concrete and particularized harm to legally protected interest; (2) causation in the form of a fairly traceable connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief."  *Id.* (internal citation omitted).  Prudential standing, meanwhile, typically "bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves."  *Rajamin v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79, 86 (2d Cir. 2014) (quoting *Warth v. Seldin*, 422 U.S. 490, 509 (1975).

Quarters argues that Cedar lacks standing because it "is not a party to the Lease or Guaranty."  (Dkt. No. 12 at 28.)  This is a challenge to both constitutional and prudential standing.  *See Phoenix Light*, 2020 WL 1285783, at *10 ("In the Second Circuit, breach of contract claims brought by non-parties to a contract have raised both constitutional and prudential standing barriers, as such cases involve a plaintiff's attempt to seek recovery on a contract in which the plaintiff has no legally protected interest, and also involves the rights or legal interests of third parties (the actual parties to the contract).").  Yet both challenges are

---

[4] Whether Cedar has standing must be resolved "before turning to the merits."  *Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, No. 14-CV-10116, 2020 WL 1285783, at *9 (S.D.N.Y. Mar. 18, 2020); *see also Cortlandt St. Recovery Corp. v. Hellas Telecomms. S.Á.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015) (holding that the "jurisdictional issue must be resolved before the merits issue" (internal citation omitted)).

without merit. Although New York law typically permits the terms of a contract to be enforced "only by contracting parties or intended third-party beneficiaries of the contract," *Rajamin*, 757 F.3d at 86, there is a well-known exception where there has been a valid assignment of rights to the plaintiff. *See Phoenix Light*, 2020 WL 1285783, at *10 (noting that standing for non-parties to a contract turns on whether they were "validly assigned the rights to the contracts underlying their breach of contract claims"); *BCS Assocs., LLC v. Leidos, Inc.*, 91 F. Supp. 3d 319, 323 (N.D.N.Y. 2015) (noting that when a "valid assignment is made, the assignee steps into the assignor's shoes and acquires whatever rights the latter had, including the right to enforce the contract" (internal quotation marks and citation omitted)).

Here, Quarters concedes that Roth and LPC — the landlords on the lease alongside JM — have assigned "all rights and causes of action regarding this matter to Cedar." (AC ¶ 9.) As there is no suggestion that the assignment was invalid, Cedar has standing to sue in their stead. Quarters' motion to dismiss under Rule 12(b)(1) is therefore denied.

### B.     Rule 12(b)(6)

Quarters argues that Plaintiffs' breach-of-contract claims are "barred by the lease," and that the other two claims in the complaint — breach of the implied covenant of good faith and fair dealing, and promissory estoppel — should be dismissed as duplicative. (*See* Dkt. No. 12 at 17, 26, 27.)

#### 1.     Breach of Contract

Plaintiffs allege two breaches of the lease, for which they seek to hold Quarters liable as guarantor: Medici's decision to terminate the lease on April 15, 2020, and Medici's "refusal to deliver the estoppel certificate required by the [l]ease." (AC ¶¶ 51-53.) The Court begins by considering the first of these allegations.

To state a claim for breach of contract under New York law, a complaint "need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *R&D Hotel v. Stop & Shop Supermarket Co.*, No. 15-CV-7285, 2016 WL 4367971, at *2 (S.D.N.Y. Aug. 15, 2016) (internal citation omitted). With respect to Medici's decision to terminate the lease, the dispute centers on the latter three prongs of the inquiry.

First, Quarters argues that Plaintiffs failed to perform their obligations under the lease. (*See* Dkt. No. 12 at 24.) According to Quarters, the lease required Plaintiffs to finish renovations and deliver the premises by November 30, 2019; when that did not happen, Quarters argued that Plaintiffs were in default. (*See* Dkt. No. 23 at 6.) But the lease contains no such language. It includes an "Anticipated Delivery Date" in October 2019 and an "Outside Delivery Date" of November 30, 2019, but nowhere does the lease require the property to be delivered by a date certain. (*See* Dkt. No. 11–1 §§ 3.3, 3.5.) Indeed, the lease expressly contemplated the scenario in which the property would not be delivered by November 30, 2019, giving Medici certain rights in that event, including the right to terminate the lease — a right that Medici did not exercise until April 2020 (as discussed below). In spending "money, time, and resources" to renovate the property, both before November 30 and after, Plaintiffs thus had no reason to think they were not performing their obligations under the lease. (AC ¶¶ 22, 29.) The Court therefore concludes that Plaintiffs have alleged adequate performance of the contract.

Second, Quarters argues that there was no breach because Medici properly exercised its right to terminate the lease. (*See* Dkt. No. 12 at 18-23.) In general, "[w]here the parties set down the terms of their agreement … in a clear and unambiguous writing, the agreement should be enforced according to its plain meaning." *R&D Hotel*, 2016 WL 4367971, at *2 (citing

8

*Rosen's Café, LLC v. 51st Madison Gourmet*, 986 N.Y.S.2d 51, 52 (1st Dep't 2014)). Here, the relevant provision of the lease is Section 3.5, which states that "if the Delivery Date has not occurred on or before November 30, 2019 (the 'Outside Delivery Date'), then Tenant, in its sole discretion, may elect … [to] give Landlord a written notice of termination of this Lease." (Dkt. No. 11–1 § 3.5.) According to Quarters, Section 3.5 gave Medici termination rights that could be exercised at any time after November 30, 2019, so Medici was well within its rights to terminate the lease on April 15, 2020. But this interpretation runs afoul of New York law. Where, as here, a contract grants a party the right to terminate the agreement but does not specify "a time by which the party must provide notice of the termination," the New York Court of Appeals has held that "'the law implies a reasonable time' as determined by the particular circumstances." *JN Contemporary Art LLC v. Phillips Auctioneers LLC*, No. 20-CV-4370, 2020 WL 7405262, at *6 (S.D.N.Y. Dec. 16, 2020) (quoting *Savasta v. 470 Newport Assocs.*, 603 N.Y.S.2d 821, 822 (N.Y. 1993)). Medici may or may not have exercised its right to terminate the lease within a reasonable time, but that is a fact-dependent inquiry the Court cannot resolve at this stage. *See, e.g.*, *Boehner v. Heise*, 734 F. Supp. 2d 389, 408 (S.D.N.Y. 2010) ("Ordinarily the question of what is a reasonable time is one for a jury unless the facts are undisputed."); *Kobrand Corp. v. Abadia Retuerta S.A.*, No. 12-CV-154, 2012 WL 5851139, at *6 (S.D.N.Y. Nov. 19, 2012) (leaving the question of reasonableness to the jury since "[w]hat constitutes a reasonable time for performance depends upon the facts and circumstances of the particular case" (internal citation omitted)). To be sure, the four-and-a-half month delay in the exercise of the termination provision is significantly shorter than the 22-month period considered by the New York Court of Appeals in *Savasta*. But what constitutes a reasonable time "depends upon the facts and circumstances of the particular case." *Savasta*, 603 N.Y.S.2d at 822. This is an

inquiry that requires consideration of "the nature and object of the contract, the previous conduct of the parties, the presence or absence of good faith, the experience of the parties and the possibility of prejudice or hardship to either one, as well as the specific number of days provided for performance." *Zev v. Merman*, 536 N.Y.S.2d 739, 739 (N.Y 1988).

Even if the Court were inclined to resolve the "reasonable time" inquiry in Medici's favor, there would still be the question of whether Medici waived its right to terminate the lease based on its actions after November 30, 2019. In Quarters' view, the existence of the no-waiver provision is dispositive. The lease says that "[n]o failure of Landlord or Tenant to exercise any power given hereunder, and no custom or practice of the parties at variance of the terms hereof shall constitute a waiver of Landlord's or Tenant's right to demand compliance with the terms hereof." (Dkt. No. 11–1 § 25.1.) Quarters argues that this language precludes Plaintiffs from alleging that Medici waived its termination rights. (*See* Dkt. No. 12 at 20-21.) Under New York law, however, the "mere existence" of a generic no-waiver provision "does not preclude waiver of a contract clause." *Morrison v. Buffalo Bd. Of Educ.*, 741 F. App'x 827, 830 (2d Cir. 2018) (quoting *Stassa v. Stassa*, 999 N.Y.S.2d 116, 119 (2d Dep't 2014)). Waivers are not "lightly presumed," but Quarters' actions (taken on Medici's behalf) in late 2019 and early 2020 — emailing Plaintiffs about the ongoing renovations, encouraging Plaintiffs to obtain additional financing, touting its new Brooklyn site in the press — could lead the Court to "plausibly … infer[]" that Medici waived its right to terminate the lease. *Morrison*, 741 F. App'x at 830 (internal citation omitted). In any event, like the reasonableness inquiry, "a party's intent to relinquish a contractual right generally presents a question of fact" that cannot be resolved at the pleadings stage. *Id.*

Finally, Quarters argues that Plaintiffs have failed to allege their entitlement to damages because their "claim for $8 million in damages for accelerated rent payments" is supposedly invalid under New York law. (Dkt. No. 12 at 23.) This argument is premature. "The Court's task on a motion to dismiss is to 'consider the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief,' and not to determine the appropriate remedy." *RJ Capital, S.A. v. Lexington Capital Funding III, Ltd.*, No. 10-CV-25, 2011 WL 3251554, at *16 (S.D.N.Y. July 28, 2011) (quoting *Iqbal*, 556 U.S. at 681); *see also Cicel (Beijing) Sci. & Tech. Co. v. Misonix, Inc.*, No. 17-CV-1642, 2017 WL 4535933, at *5 (E.D.N.Y. Oct. 7, 2017) (holding that "it is premature at the motion to dismiss stage to determine what form of damages may be appropriate"). Here, Plaintiffs have adequately pleaded facts suggesting an entitlement to damages resulting from the alleged breach of the lease, including incidental damages (AC ¶ 29), damages due to lost opportunity (AC ¶¶ 18, 20), and attorney's fees and costs (AC ¶ 54). At this stage, nothing more is required. Having adequately pleaded performance, breach, and damages, Plaintiffs have successfully stated a claim for breach of contract based on Medici's decision to terminate the lease.

Plaintiffs' second breach-of-contract claim concerns Medici's refusal to execute an estoppel certificate. (AC ¶ 52.) Under Section 21.1 of the lease, Medici had agreed, "at any time within fifteen Business Days after Landlord's request, [to] execute and deliver an estoppel certificate" certifying a number of details about the lease, including whether the terms had been modified, whether Medici was involved in any bankruptcy actions, and whether Medici had knowledge of any "uncured defaults by Landlord." (Dkt. No. 11–1 § 21.1.) When Plaintiffs requested an estoppel certificate in March 2020, Quarters refused to sign on Medici's behalf unless the certificate stated that the landlords were in default. (AC ¶¶ 38, 39.) In its motion to

11

dismiss, Quarters argues that its requested modification was proper, and that Plaintiffs' unwillingness to sign the modified certificate meant that it was "Landlord, not Tenant[,] that refused to execute the factually accurate estoppel certificate." (Dkt. No. 12 at 25.) Both arguments assume that Plaintiffs' failure to complete the renovations by November 30, 2019, was a default that ought to have been reflected on the certificate. That is not necessarily the case. As explained above, nothing in the lease unconditionally required Plaintiffs to deliver the premises by a specific date. Plaintiffs have thus plausibly alleged that Quarters' refusal to execute the requested certificate constituted a breach of the lease.

### 2. Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiffs also allege that Quarters breached the implied covenant of good faith and fair dealing. Under New York law, that covenant is "[i]mplicit in every contract" and represents "a pledge that neither party to the contract shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruit of the contract, even if the terms of the contract do not explicitly prohibit such conduct." *VR Optics, LLC v. Peloton Interactive, Inc.*, No. 16-CV-6392, 2017 WL 3600427, at *3 (S.D.N.Y. Aug. 18, 2017) (quoting *Gutierrez v. Gov't Emps. Ins. Co.*, 25 N.Y.S.3d 625, 625 (2d Dep't 2016)).

Quarters argues that this claim should be dismissed as "entirely duplicative of Plaintiffs' breach of contract claim." (Dkt. No. 12 at 26.) But "a claim for a covenant of good faith and fair dealing 'is not necessarily duplicative of a cause of action alleging breach of contract,'" and here the claims are distinct. *Id.* (quoting *Gutierrez*, 25 N.Y.S.3d at 625). Plaintiffs allege that "Quarters' repeated representations, in private and public, regarding the opening of a Fort Greene location at the Premises, while it supposedly believed Plaintiffs to be in default, constitutes bad faith." (AC ¶ 58.) Plaintiffs also allege that Quarters acted in bad faith when it suggested that Plaintiffs "engage in a fraudulent conspiracy involving a 'side letter' that would

12

squarely contradict representations made to a bank." (AC ¶ 59.) Based on these allegations, a reasonable fact finder could find that Quarters breached the covenant of good faith and fair dealing, even if it did not technically breach the lease. *See VR Optics*, 2017 WL 3600427, at *4 (finding implied covenant claim distinct from breach-of-contract claim where defendant's conduct, "while technically not constituting a breach of contract, nevertheless deprive[d] the plaintiff of the benefit of its bargain" (internal citation omitted)); *Konecranes, Inc. v. Cranetech, Inc.*, No. 03-CV-6082, 2005 WL 246916, at *3 (W.D.N.Y. Feb. 2, 2005) (finding the two claims distinct where implied covenant claim involved an allegation that defendant "violated the spirit of the agreement" at issue). Quarters' motion to dismiss Plaintiffs' claim for breach of the covenant of good faith and fair dealing is therefore denied.

### 3. Promissory Estoppel

In the alternative, Plaintiffs assert a claim for promissory estoppel based on Quarters' promises to "open at the Premises" and "honor the Lease," which led Plaintiffs to spend more than $1 million on renovations. (AC ¶¶ 64-65.) Quarters argues that this claim should likewise be dismissed as duplicative of the claim for breach of contract. Promissory estoppel is a kind of quasi-contractual relief that generally "applies only in the absence of a valid and enforceable contract." *Bader v. Wells Fargo Home Mortg. Inc.*, 773 F. Supp. 2d 397, 415 (S.D.N.Y. 2011). Quarters is right that such relief is typically "not permitted when an express agreement exists that governs the dispute between the parties." *Bridgeway Corp. v. Citibank, N.A.*, 132 F. Supp. 2d 297, 305 (S.D.N.Y. 2001). But the Court is reluctant to dismiss a promissory estoppel claim where, as here, it is pleaded "solely as an alternative to the breach of contract claim." *Id.* Dismissing Plaintiffs' "alternative theories at this stage would violate the liberal policy of Rule 8(e)(2)[,] which allows plaintiffs wide latitude in framing their right to recover." *Seiden Assocs.,*

*Inc. v. ANC Holdings, Inc.*, 754 F. Supp. 37, 40 (S.D.N.Y. 1991) (internal quotation marks omitted). Quarters' motion to dismiss Plaintiffs' promissory estoppel claim is thus denied.

### C. Rule 12(b)(7)

Finally, Quarters argues that the complaint should be dismissed pursuant to Rule 12(b)(7) for failure to join three parties: Roth, LPC, and Medici. (*See* Dkt. No. 12 at 28-30.) To determine whether dismissal is warranted under 12(b)(7), courts conduct a two-part inquiry under Rule 19, first asking whether the absent parties should be joined as necessary parties under Rule 19(a), and then — if the parties are necessary but joinder is impossible for jurisdictional or other reasons — turning to Rule 19(b) to decide whether the action may nevertheless proceed. *See supra* II.C.

Quarters argues that Roth, LPC, and Medici are necessary because their absence "prevents the Court from according complete relief among the parties." (Dkt. No. 12 at 28.) In support of this argument, Quarters cites a number of cases establishing that parties to a contract are typically considered necessary parties under Rule 19(a)(1). *See, e.g.*, *Kawahara Enters., Inc. v. Mitsubishi Elec. Corp.*, No. 96-CV-9631, 1997 WL 589011, at *3 (S.D.N.Y. Sept. 22, 1997) (holding that "parties to the contract [underlying] plaintiff's breach of contract… claims" were necessary under Rule 19(a)); *Glob. Disc. Travel Servs., LLC v. Trans World Airlines, Inc.*, 960 F. Supp. 701, 707-08 (S.D.N.Y. 1997) (stating that a "direct party to the contract … under dispute" was a "necessary party" to the litigation).

But such cases are inapposite here. First, consider Roth and LPC. Although they are parties to the lease, they have assigned all their rights to Cedar (AC ¶ 9) — a nuance that distinguishes this case from the others Quarters cites. By assigning their rights to Cedar, Roth and LPC have become "dispensable for purposes of Rule 19." *On-Line Techs. v. Perkin Elmer Corp.*, 141 F. Supp. 2d 246, 254 (D. Conn. 2001); *see also id.* ("An assignor of rights and

14

...
...

liabilities under a contract is not needed for a just adjudication of a suit brought by the assignee." (internal citation omitted).  In light of the assignment, the Court needs neither Roth nor LPC to "accord complete relief among existing parties."  *See* Fed. R. Civ. P. 19(a)(1)(A).  And given that the assignment covers "all rights and causes of action regarding this matter" (AC ¶ 9), the absence of Roth and LPC will neither impair their interests — which they have disclaimed — nor leave Quarters at risk of "double, multiple, or otherwise inconsistent obligations."  *See* Fed. R. Civ. P. 19(a)(1)(B).

Similar reasoning applies to Medici, a shell company with no "independent personnel, offices, or operations," and no assets other than the lease.  (AC ¶ 13.)  Given that Quarters "exerts full control over [Medici], including all of its business decisions," Medici is a party to the lease in name only.  (AC ¶ 12.)  Its presence is not necessary to accord complete relief among the existing parties, *see* Fed. R. Civ. P. 19(a)(1)(A), especially since Quarters signed a guaranty making it liable for any damages arising from the lease.  (AC ¶ 21.)  Moreover, as a shell company, Medici has no interest in the litigation separate from Quarters, nor does its absence expose any existing party to the risk of inconsistent obligations.  *See* Fed. R. Civ. P. 19(a)(1)(B).

Quarters has thus failed to demonstrate that Roth, LPC, or Medici is a necessary party under Rule 19(a)(1).  The Court need not proceed further.  Quarters' motion to dismiss under Rule 12(b)(7) is denied.

### D.     Motion for Sanctions

In addition to filing a motion to dismiss, Quarters has also filed a motion for sanctions. (*See* Dkt. No. 25.)  Quarters argues that sanctions are warranted under Rule 11 of the Federal Rules of Civil Procedure for three reasons: (1) Plaintiffs' arguments are "baseless" and "barred by well-established New York law," (2) Plaintiffs deliberately made false allegations in the

complaint, and (3) Plaintiffs filed the complaint for improper purposes.  (*See* Dkt. No. 27 at 19, 22, 24.)

In relevant part, Rule 11(b) provides that an attorney presenting a pleading, written motion, or other paper to the court certifies that "(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; "(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; and "(3) the factual contentions have evidentiary support or … will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b).  If a court determines that Rule 11(b) has been violated, the decision whether or not to impose sanctions is ultimately "a matter for the court's discretion."  *Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, No. 16-CV-885, 2019 WL 422613, at *2 (S.D.N.Y. Feb. 4, 2019) (internal citation omitted).

The Court need not spend much time dispensing with Quarters' first argument, as the Court would not have denied Quarters' motion to dismiss had it concluded that Plaintiffs' arguments were baseless.  *See supra* III.A-C.  At this early stage, the Court is not persuaded that Plaintiffs' allegations were "so 'patently void of any legal or factual basis' as to warrant sanctions."  *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, No. 04-CV-5316, 2006 WL 2807213, at *6 (S.D.N.Y. Sept. 28, 2006) (quoting *W.K. Webster & Co. v. Am. President Lines, Ltd.*, 32 F.3d 665, 670 (2d Cir. 1994)); *see also W.K. Webster*, 32 F.3d at 670 (finding sanctions unwarranted where defendant-appellant "clearly presented colorable claims with regard to the issues it raised and made plausible arguments in support of its positions").

Quarters' second argument centers on the allegations surrounding the estoppel certificate. According to the complaint, when it became clear that Plaintiffs would not sign an estoppel certificate that stated that they had defaulted on the lease, as Quarters requested, Quarters suggested that it would sign an estoppel certificate stating that no default had occurred if Plaintiffs agreed to sign a "side letter" saying the opposite.  (AC ¶¶ 39-40.)  Quarters claims it never made such a suggestion.  (*See* Dkt. No. 27 at 22-23.)  But Quarters provides no compelling evidence to the contrary, nor can it:  All of its arguments pertain to the email correspondence between the parties, not to the phone call on which Plaintiffs allege the suggestion was made.  (*See id.*)  In any event, the Court declines to award sanctions on the basis of a factual dispute that need not be resolved at this early stage.

Quarters' third argument is similarly unavailing.  In the Second Circuit, improper purpose is not a valid basis for sanctions unless the complaint has been found to be frivolous.  *See Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995) ("[I]t would be counterproductive to use Rule 11 to penalize the assertion of non-frivolous substantive claims, even when the motives for asserting those claims are not entirely pure." (internal citation omitted)).  Since Quarters has failed to demonstrate that Plaintiffs' claims are frivolous, it does not matter what motive Plaintiffs had for filing the complaint.

Quarters' motion for sanctions is therefore denied.  Plaintiffs' request for reimbursement of attorney's fees incurred in opposing the motion is denied as well.

**IV.    Conclusion**

For the foregoing reasons, Defendant's motion to dismiss and Defendant's motion for sanctions are DENIED.  Defendant is directed to answer the complaint by March 29, 2021.

The Clerk of Court is directed to close the motions at Docket Numbers 10, 24, and 25.

SO ORDERED.

Dated: March 8, 2021
       New York, New York

                                        _____
                                                  J. PAUL OETKEN
                                             United States District Judge